JOSEPH L. HUDSON AND CAMPBELL SYMINGTON v. MARY C. ROOS.

[See 72 Mich. ——.]

*Sale—Acceptance of property—Evidence—Conduct of counsel.*

1. It is *prejudicial* error to permit counsel for the plaintiffs in his examination of persons drawn as jurors on their *voir dire* to really open his case to them.

    So *held*, where counsel was permitted to state not only the full particulars of plaintiffs' claim, but to give his version of the defense that would be set up.

2. Where in a suit to recover the value of certain mirrors the defendant claimed that they were defective, and were never accepted, it is competent to show that defendant requested a third person to notify plaintiffs of her dissatisfaction, if it is shown that such message was communicated to the plaintiffs; otherwise such testimony is incompetent and immaterial.

3. Where on the trial of a suit to recover the price of a mirror which, after being delivered to the purchaser, had been taken away by the vendors to be resilvered, the mirror was brought into the court-room by the plaintiffs, and witnesses testified in relation to it, having their attention directed to it by plaintiffs' counsel, and its workmanship, and whether it was defective or not after being resilvered, was made part of the issue, the jury should have been permitted to inspect the mirror at the request of defendant's counsel.

4. The right to use the testimony of a witness taken on the *first* trial of a case on a *second* trial, on account of his absence from the State, is not affected by the fact that he testified as a witness for the *opposite* party on the first trial.

5. The use of mirrors by a vendee in her place of business for the purpose for which she purchased them, or for any other beneficial purpose, without offering to return them or notifying the vendors to take them away, may well be treated by the jury in a suit for the purchase price as an acceptance; but if the mirrors were put up against her orders after notice of her dissatisfaction therewith, and were so placed that any one passing by could not help looking in them, in which manner *alone* they were used for a day or so, or until the vendee could reasonably notify the

vendors of their non-acceptance, *such* use would not amount to an acceptance.

Error to Wayne. (Gartner, J.)　Argued June 19, 1889. Decided July 11, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts, as also the *points* of counsel passed upon by the Court, are stated in the opinion.

*Larned & Larned* (*Henry M. Cheever*, of counsel), for appellant.

*H. C. Wisner*, for plaintiffs.

MORSE, J.　This case was here in the October term, 1888, and a judgment in favor of plaintiffs reversed for errors occurring on the trial before Hon. George Gartner, circuit judge, without a jury.

The case is reported in 72 Mich.——(40 N. W. Rep. 467), where the main controversy at that time as to the large pier-glass or mirror is outlined.

The cause was again tried in the Wayne circuit before a jury, who found a verdict in favor of the plaintiffs for $173.82. It is now here for review.

On this last trial the claim of the plaintiffs, as submitted by their counsel to the jury, was as follows:

| | |
|---|---|
| Sundries | $84.98 |
| Three mirrors | 125.00 |
| Total | $209.98 |
| Interest at 6 per cent., 1½ years | 18.88 |
| Total, with int. | $228.86 |

The large mirror was $50, and the smaller ones $75 for the two.

The issues between the parties were as follows:

1. The plaintiffs claimed that they agreed to furnish the small items in the bill of sundries at the usual rates, while

Madame Roos contended and testified that she was to have them at a reduced price, which was fixed when she purchased them. The difference between them on these articles was about $19.50, with interest at 6 per cent. for one and one-half years.

2. As to the small mirrors, Madame Roos claimed that they were defective, and that she never accepted them; that they were put up in her absence from the room, after she had stated to Mr. Quigley, who came to put them up, and represented the plaintiffs, that she was disappointed in them, and that they were not first-class, as she expected them to be, and said to him, " Don't put those up; I am not satisfied with them." Plaintiffs claimed that these mirrors were all right; that she made no complaint about them when they were put up; and that they had been in use by defendant ever since they were put up.

3. The controversy as to the large mirror, whether, when it was taken away to be resilvered, it was to be returned in two weeks, as claimed by Madame Roos, or in a reasonable time, as contended by plaintiffs.

We are inclined to agree with the counsel for plaintiffs that the jury in their verdict did not allow plaintiffs the price of the large mirror, $50 and interest, as the amount of the verdict can be explained on no other hypothesis.

But as there were errors which necessarily must have affected the disposition by the jury of all the issues, or may have done so, and we are satisfied that because of such errors the case must go back for a new trial, at which trial the controversy in respect to the large mirror will again come up, it will be necessary to notice most of the questions arising under that issue, and assigned as error in this Court.

The first error, and one affecting the whole case, was in the conduct of the counsel for the plaintiffs in his examination of the persons drawn as jurors on their *voir dire*.

Against the objection of defendant's counsel, he was permitted by the court, under the pretense of ascertaining whether or not the jurors knew anything about the case, to really open his case to them. It is argued by the counsel who did this that it was necessary to do this because of the

peculiar character of the persons usually drawn as jurors in the Wayne circuit, and that it is his practice to do so in all cases where he is concerned as counsel. He also contends that he did not over-step the bounds of his privilege in this respect, and that he said no more than was absolutely necessary in order to ascertain whether the jurors were unprejudiced and impartial in the case.

We think he said much more than was necessary, and that he went a great way beyond his privilege, and that the effect was to prejudice and bias the persons sitting in the jury-box, before they were sworn in the case; and that an objection to the whole panel would have been a good one, at the close of his remarks, if it had been made by defendant's counsel, unless a re-examination would have shown that the counsel's speech had had no effect upon them. We do not say that the counsel intended to affect the jury, or to get an extra argument in favor of his clients, but that is what it amounted to.

He not only stated to the jury the full particulars of the plaintiffs' claim, but also took it upon himself to give his version of the defense that would be set up. He stated that the spots upon the large mirror were due to chemical action, "not the fault of anybody except the Almighty;" that there were no defects whatever found in the small mirrors; and, speaking as to the sundries, after stating that the plaintiffs—

"Charged the defendant the ordinary and going prices, as you would charge a person going to your store and buying a piece of goods,"

Wound up by asking the persons in the panel the following question:

"When nothing was said about the price, you would put on your books the ordinary selling price of that article, would you not?"

He concluded his address as follows:

"When the bill was sent to Mrs. Roos she refused to pay, and the answer that she made to the bill of these merchants was that they had charged her too much for those items; and you will hear her, if you try the case—I am informing you about the case to ascertain whether you will try it or not—you will hear Mrs. Roos testify that she made an agreement with Hudson & Symington in regard to each item, that she would pay them just so much and no more. Now, these plaintiffs are merchants in Detroit, and I think you all know them by reputation. They are business men. They are compelled to do what many merchants have to do,—a thing unpleasant for anybody,—to come into court to collect their just accounts.

"Now, gentlemen of the jury, I have explained to you what the case is, who the parties are, and all we want is an honest vote and a fair count. We do not want to do this lady any harm. We do not want you to give any verdict against her that is not just, or not any amount that does not belong to these plaintiffs. We want this case tried on business principles. Now, with this understanding of the case,—and I think I have stated it so you understand it fully,—I ask you if there is any one of you in any way related to the plaintiffs, either by business relations or in any other way, that would cause you to lean either way in trying this case? If so, just announce the fact, and I will excuse you. If you know anything about the case which you think would prejudice the rights of either of these parties, just notify me, and I will excuse you. I will leave it to your honor to say whether you can fairly in a business way settle the dispute between these parties."

The record states that none of the jurors made any reply, and, after waiting a moment, the counsel announced himself as satisfied with the jury.

The counsel for the defendant then stated that he desired an exception to the statement or argument of counsel before the jury were sworn, and that he would say that it was a misstatement of the facts of the case.

"*The Court.* Very well, you have your exception, Col. Larned."

The record then proceeds as follows:

76 MICH.—12.

" After the defendant's counsel had questioned the jurors individually, and each one of them replied that he knew noth-ing of the facts of the case, Mr. Wisner remarked:

" May it please the court: The Supreme Court of this State have said that they will not reverse the case for error which does not prejudice. My brother has excepted to my remarks in explaining this case to the jury, with a view, I suppose, of taking the case to the Supreme Court. Since the jurors have all announced in answer to my Brother Larned that they knew nothing at all about the case, certainly my statement to them of the facts has done no harm.

" Col. Larned. I object to that statement, and I take an exception to it.

" The Court. You can except to anything that appears of record in this case."

We have thus fully set forth a portion of the remarks of counsel to show the extent and character of his address.

It would seem that he must have forgotten the stage of the trial, and supposed that l.e was summing up the case on final argument.

The record states that, after the jury were sworn, the plaintiffs' counsel—

" Made a further opening statement of the facts which he expected to prove."

By this practice the counsel for the plaintiffs was enabled to get four arguments to the jury,—one before they were sworn and three afterwards, at least one more than he was entitled to.

This should not have been permitted by the court. The attention of the circuit judge was called to it in the beginning, and his failure to keep the counsel within bounds was prejudicial error.

The defendant testified as follows:

" Q. When after that did you notify the plaintiffs or their agents in regard to any dissatisfaction you had with those mirrors?

" A. The next day. Miss Penniman was going down town, and I told her to stop in and see Mr. Symington, and

tell him to come up; that I wanted to talk with him about the mirrors; that I was dissatisfied with them."

On motion of plaintiffs' counsel it was stricken out, although the counsel for defendant proposed to show that Miss Penniman carried the message to Mr. Symington, or, rather, suggested that if he did show it it would be competent.

Miss Penniman was sworn in the case, however, and no attempt was made to prove by her that she carried any such word to Mr. Symington.

We think it would be proper, under the issue in this case as to the two small mirrors, for the defendant to show that she sent this message to Mr. Symington, one of the plaintiffs, and Miss Penniman communicated it to him, he being one of the plaintiffs. But if Miss Penniman did not take the message to him, then what Madame Roos said to Miss Penniman would be both immaterial and incompetent.

We also think that the jury should have been permitted to inspect the large mirror at the request of the defendant's counsel. It was brought into the court-room by the plaintiffs, and witnesses testified in relation to it, having their attention directed to it by plaintiffs' counsel. It was evidently brought there and placed in the view of the jury by the plaintiffs for the purposes of the trial. Its workmanship, and whether it was defective or not after being resilvered, was made part of the issue; and, if the defendant's counsel thought that a closer inspection of it by the jury would aid his client, we can see no reason why he was not entitled to it.

Some errors are assigned as to remarks made by the court, and also by counsel for the plaintiffs, during the trial, but as they are such as would not be likely to arise upon another trial we shall not here discuss them.

It is claimed that the court did not plainly put to the jury the theory of the defendant that plaintiffs were to return the mirror within two weeks, and clearly instruct them that if

they found this theory to be correct she was not bound to receive the mirror, unless it was returned within that time. We think this claim is not well founded.

The jury were plainly told more than once that, if the agreement was that the glass should be returned in two weeks, Madame Roos was not bound to take it unless it came back within that time.

Plaintiffs' counsel offered in evidence and read the testimony of Jennie Murdock, given on the first trial of this case, at which trial she was subpœnaed and sworn as a witness on the part of the defendant. It appeared that the witness was in Boston, Massachusetts, and out of the jurisdiction of the court, but it was not shown that any attempt had been made by either party to obtain her testimony on the last trial, either by subpœna or deposition. It was admitted that the printed record of the first trial, from which her testimony was read, contained a correct statement of her evidence as given on that trial, and the only objection made by defendant's counsel to the admission of this testimony was that the plaintiffs could not use it because she was defendant's witness when she gave it. This objection is not tenable. *Howard v. Patrick*, 38 Mich. 795.

Complaint is also made of that portion of the charge of the court in which he instructed the jury that if the mirrors—

" Were made use of for any length of time, no matter how short a time it may have been, there was an acceptance of those mirrors on the part of Mrs. Roos, and she would be liable for the contract price,''—

Unless latent defects were found in them afterwards.

We think this charge a little too broad, under the circumstances of the case, as to the two small mirrors. According to the testimony of Mrs. Roos,—and she had a right to go to the jury on her testimony,—these mirrors were put up against her orders, while she was attending to a customer

somewhere else; that they were so placed that when any one passed by them in the room they could not help looking in them, and that in that manner and to that extent they were used, but not otherwise. We do not think that this kind of use for a day or so, or until she could reasonably notify plaintiffs that she did not accept them, would be an acceptance; but if she used them for the purposes for which she purchased them, or for any other beneficial purpose in her business, without offering to return them or notifying plaintiffs to take them away, the jury might well treat such use as an acceptance of the mirrors.

We find no other errors in the trial. For those noted the judgment must be reversed, and a new trial granted to defendant, with costs of this Court.

The other Justices concurred.